UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| CAROLYN E. SAUNDERS | : | |
| Debtor | : | Bankruptcy No. 05-14158F |

...................................................

MEMORANDUM

...................................................

Presently before me is Flagstar Bank's amended motion to dismiss pursuant to 11 U.S.C. §§ 105(a), 1307(c) or, in the alternative, for relief from the automatic stay under § 362. Flagstar alleges that dismissal is warranted because the debtor filed this bankruptcy case simply to delay Flagstar from exercising its rights under the note and mortgage to foreclose upon its collateral, and because (for a number of reasons) the debtor cannot reorganize. Alternatively, Flagstar seeks relief from the stay, averring that the debtor's bad faith filing constitutes cause for termination of the bankruptcy stay, that Flagstar is not a creditor of the debtor, and that the debtor has no equity in the mortgaged premises.[1]

---

[1]The movant also alleges that the debtor's case should be dismissed for violations of 11 U.S.C. § 105 and Bankruptcy Rule 9011. However, section 105 addresses the power of the court to carry out the provisions of Title 11, therefore its applicability to this dispute is unclear, except as a source of power to dismiss a bad faith bankruptcy case. Fed. R. Bankr. P. 9011 authorizes sanctions for making improper representations to a bankruptcy court; however a motion for sanctions must "be made separately from other motions or requests and shall describe the specific conduct alleged to violate [the Rule]." Fed. R. Bankr. P. 9011(c)(1)(A). Moreover, the offending party should be given 21 days to rectify the error prior to the filing of the motion. See id.; In re Shubov, 253 B.R. 540, 545-46 (B.A.P. 9th Cir. 2000); In re Erkins, 253 B.R. 470, 477 (Bankr. D. Idaho 2000). Since the movant has not complied with Rule 9011, its request for

(continued...)

The debtor replies that the instant bankruptcy case was filed in good faith, that she now has regular employment sufficient to save the property from foreclosure, that she inherited the mortgaged property from her son, and that the movant's secured claim is adequately protected. She also challenges the amount of the arrearage and the monthly mortgage payment asserted as owing by Flagstaff. In this bankruptcy case, the debtor proposes to cure the mortgage arrears through her chapter 13 plan while making regular mortgage payments, utilizing her estimates of the proper amounts. See generally 11 U.S.C. § 1322(b)(5).

At the conclusion of the hearing, the United States trustee and the standing chapter 13 trustee both support dismissal of this case as filed in bad faith.[2]

The movant and the debtor have now submitted post-hearing memoranda.[3] After an evidentiary hearing, the following facts were proven.

---

[1](...continued)
sanctions cannot be granted.

[2]On July 12, 2005, after the conclusion of the hearing in this contested matter, the chapter 13 trustee filed his own motion to dismiss this case as filed in bad faith. That hearing is presently scheduled for August 23, 2004.

[3]Both parties, especially debtor's counsel, prefer hyperbole to legal reasoning and scholarship. Thus, the memoranda were less helpful than they could have been. Furthermore, to the extent that Flagstar's posthearing memorandum refers to facts not offered in evidence, those assertions were not considered.

I.

Flagstar holds a mortgage on property located at 2390 Douglas Avenue, Upper Chichester, PA, 19014.[4]  The property was owned by Ernest G. Bradley, a/k/a Ernest G. Saunders, the debtor's son, until his death on October 7, 2004.  Ex. D-2.  The mortgage is dated November 15, 1995, was in the principal amount of $57,750, and among its provisions was a "due on sale clause."  Ex. M-6 (Mortgage, ¶ 17).[5]

Before and at the time of Mr. Bradley's death, the mortgage was in default. The debtor, who now resides at the property, was appointed administratrix of Mr. Bradley's estate on October 18, 2004.  Ex. D-2.  As will be discussed below, Mr. Bradley died intestate and without children.

The debtor has an extensive history of bankruptcy filings in this court spanning 19 years.  Her first known case, docketed at Bankr. No. 86-05624, was filed under chapter 13 on December 9, 1986.  See Exhibit M-1.  The debtor received a discharge on October 23, 1987 and the case was thereafter closed.

On October 4, 1993, the debtor filed pro se her second known case, docketed at Bankr. No. 93-15839, this time under chapter 7.  Id.  The debtor received a chapter 7 bankruptcy discharge on March 9, 1994, and the case was closed March 17, 1994.  Thereafter, she commenced a string of unsuccessful chapter 13 cases apparently

---

[4]The mortgage, a copy of which is attached to Ex. M-6, was originally held by First Security Savings Bank, F.S.B.  Flagstar asserts and the debtor admits that it currently holds the mortgage.  Motion and Answer, ¶ 3.

[5]The due on sale clause states that it will not be exercised by the lender if prohibited by federal law.  As will be discussed below, there is a relevant federal law that prohibits Flagstar from exercising this provision.

designed to avoid the foreclosure of her real property located at 2706 Boyle Street, Philadelphia, Pennsylvania.

The debtor's third case, Bankr. No. 95-18968, was filed <u>pro se</u> under chapter 13 on November 14, 1995, and dismissed August 28, 1998, pursuant to the chapter 13 trustee's motion. <u>Id.</u> The debtor's next chapter 13 case, Bankr. No. 98-32019, was filed <u>pro se</u> on September 21, 1998, and was dismissed on May 7, 1999, pursuant to the chapter 13 trustee's motion. <u>Id.</u> The debtor's fifth case was also another attempted chapter 13 reorganization, Bankr. No. 99-31503, filed September 10, 1999, and was dismissed June 16, 2000, upon motion of the chapter 13 trustee. <u>Id.</u>

The debtor filed a sixth <u>pro se</u> chapter 13 bankruptcy case, Bankr. No. 00-30377, on August 18, 2000. This case was not confirmed, but was dismissed October 11, 2000 due to the debtor's failure to pay the requisite filing fee. <u>Id.</u> This led to the debtor's seventh bankruptcy case under chapter 13, Bankr. No. 01-31634, filed on August 14, 2001. <u>Id.</u> In this case she was represented by her present counsel. <u>Id.</u> This bankruptcy case was not confirmed, but was dismissed December 13, 2001, again for failure to pay the filing fee. <u>Id.</u>

The debtor's eighth bankruptcy case, Bankr. No. 02-32616, was filed <u>pro se</u> on September 6, 2002. <u>Id.</u> During the course of that case, the chapter 13 trustee brought a motion to dismiss the case with prejudice due to the debtor's multiple filings. In resolution of the trustee's motion, the case was converted to Chapter 7 on December 10, 2002. <u>Id.</u> The case was dismissed however, on April 2, 2003, for failure to appear at the scheduled creditors' meeting. <u>Id.</u> The debtor's ninth bankruptcy case, Bankr. No. 03-

33548, was filed pro se on September 12, 2003 as a chapter 7 case. Id. The debtor

received a chapter 7 bankruptcy discharge in this case on January 30, 2004.

The present chapter 13 case, filed March 29, 2005, is thus the debtor's tenth

bankruptcy petition since 1986.[6] Id.[7] One difference from most of the prior cases is that

the debtor now identifies her residence as 2390 Douglas Avenue, the movant's collateral.

Id. In her prior cases from 1993 onward, the debtor identified her residence as 2706

Boyle Street, Chester, Pennsylvania.

On bankruptcy schedule A, the debtor asserts that she is the owner of the

Boyle Street realty, a property that she values at only $15,000, and asserts that there is a

secured claim of $10,000 against it. Ex. M-5. On schedule A, the debtor also contends

that she is the owner of the Douglas Avenue property, "inherited as sole heir of her son,

Ernest G. Bradley." Id.

The debtor lists the current market value of the Douglas Avenue property as

$80,000 with a $65,000 secured claim. Id. However, she testified that she did not know

the value of the realty and merely copied the value her son had placed on the property in

---

[6]In addition to the debtor's frequent use of the bankruptcy system, and though she is not an attorney, she has assisted many individuals in filing their own pro se bankruptcy petitions. See In re Johnson, 250 B.R. 521, 525 (Bankr. E.D. Pa. 2000). The debtor argues that such conduct demonstrates her altruistic nature. Flagstar contends that her actions further demonstrate her disregard for the legitimate bankruptcy process.

[7]Remarkably, the debtor's 2005 bankruptcy petition identified only the prior 2003 case when she was asked to list all bankruptcy cases commenced by her within the past six years. Ex. M-5. Debtor's counsel argued that her failure to disclose the four other cases filed 1999, 2000, 2001 and 2002 was simply an "oversight."

his prior bankruptcy filing.[8]  The debtor testified that she presently resides at the Douglas

Avenue property with her two adopted children, plus her daughters' two children who had

been in the custody of her son after her daughter's murder.

The debtor scheduled net monthly income of $4,253.92.  A portion of this

income is derived from social security income received on behalf of the debtor's two

grandchildren.  Id.  The debtor additionally receives $1,038 monthly in alimony,

maintenance or support.  (In the debtor's prior case, she showed only the $1,038 in

alimony or support payments as income, with just the two adopted children.  Ex. M-8.)

She has been employed for one year by Community Transit as a driver, netting $1,779.42

monthly, inclusive of estimated overtime pay.  Ex. M-5 (Schedule I).

The debtor then approximates her monthly expenses to total $3,981,  Ex.

M-5 (Schedule J), leaving $272.92 as excess monthly income, of which she proposes to

devote $200 monthly to a chapter 13 plan running 60 months, totaling $12,000.  Her

proposed chapter 13 plan provides that she will tender regular post-bankruptcy mortgage

payments directly to Flagstar and cure her son's mortgage arrears over the life of her plan.

Her Schedule I indicates a monthly mortgage payment of $800.[9]  She testified that the

property currently is not insured.  It is not clear how much she believes the arrears to be,

and Flagstar has not filed a proof of claim in this case.  In Mr. Bradley's 2004 case,

---

[8]The debtor also indicates an interest in a lease on 2405 Booker Avenue, Aston, PA, with a Mary Williams of Pottstown, PA.  Ex. M-5, Schedule G.  She neglects to identify what interest she has in this leasehold: whether as lessor or lessee.   She identified the Booker Avenue address on her Statement of Financial Affairs as a prior address, occupied by her from August 2003 to November 2004.

[9]Exhibit M-6 states that the monthly mortgage payment as of August 2004 was $718.65.

6

Flagstar filed a secured proof of claim asserting that it was owed $76,086.56 on its

mortgage and held a prepetition arrearage claim of $28,215.61.  Ex. M-6.[10]

      The debtor's plan classifies separately the mortgage and tax lien claims

against the Boyle Street property and states that a tenant living in the property "is

responsible for all such claims against that property. . . ."[11]  The Delaware County Tax

Claim Bureau has filed a tax lien claim in the amount of $2,371.97, for tax year 2004,

against the Douglas Avenue property.  The debtor's proposed plan makes no provision for

payment of this claim through the trustee, and merely states that "arrangements" will be

made to pay this obligation.  Debtor's Proposed Plan, ¶ 4(C).

      In addition to the debtor's numerous prior bankruptcy filings, the debtor's

son, Mr. Bradley, filed his own chapter 13 bankruptcy case, Bankr. No. 99-30528, on

August 18, 1999.  That reorganization case ultimately was dismissed on July 9, 2004,

pursuant to the chapter 13 trustee's motion for failure to make payments in accordance

with the chapter 13 plan.  The debtor has offered in evidence a copy of the chapter 13

trustee's report in that 1999 case.  Ex. D-1.  The report reflects that Flagstar was

scheduled as a secured creditor holding a prepetition arrearage claim of $20,300.  Id.

Furthermore, Flagstar received distributions from the trustee totaling $18,459.85, before

the case was dismissed in July 2004.  Id.

---

[10]Flagstar attached a proposed proof of claim to its memorandum of law and noted
its intention to file the claim, but as of this writing, has not done so.   As the proof of claim was
not admitted in evidence I will not consider it for purposes of this contested matter.

[11]The debtor's schedules, however, do not disclose any rental income from the
Boyle Street property on Schedule I, nor any lease agreement for that property on Schedule G.

After his 1999 case was dismissed, Mr. Bradley filed a second bankruptcy

case, Bankr. No. 04-30835, a month later, on August 10, 2004.  The debtor's present

counsel represented Mr. Bradley in that second case.  Flagstar filed a proof of claim dated

October 20, 2004, alleging that there was a prepetition mortgage arrearage in the amount

of $28,215.61.  Flagstar later obtained relief from the bankruptcy stay on January 6, 2005.

This second case was dismissed on January 18, 2005, and the debtor and any spouse were

barred from filing additional bankruptcy cases without prior court approval.  Ex. M-3.

For reasons not understandable, debtor's counsel did not inform the court or Flagstar that

Mr. Bradley had died on October 17, 2004.[12]


II.


A.


The first issue that should be considered is whether the debtor is an "owner"

of the Douglas Avenue real estate.  If not, then the debtor is unable to use the

---

[12] Fed. R. Bankr. P. 1016 addresses the issue of a debtor's death or incompetency.
In light of this rule, a court has noted:

> Although Rule 1016 is silent on the point, effective
> implementation of the rule necessitates a conclusion that all parties
> in interest have a duty to inform the court of the fact of death. It
> would be appropriate for a party to borrow from [Fed. R. Civ. P.]
> 25 and file a suggestion of death on the record and ask that the
> court notice a hearing on the question of whether to dismiss or to
> proceed with the case.

In re Eads, 135 B.R. 380, 383 n.4 (Bankr. E.D. Cal. 1991).

reorganization provisions of chapter 13 to affect the rights of Flagstar, who is not in privity with the debtor, thus warranting either relief from the bankruptcy stay or dismissal.  See In re Kizelnik, 190 B.R. 171, 184 (Bankr. S.D.N.Y. 1995).   Conversely, if the debtor has an ownership interest, she may be able to provide for Flagstar's mortgage claim in her chapter 13 case (assuming that the case was filed in good faith).  See In re Curinton, 300 B.R. 78, 86 (Bankr. M.D. Fla. 2003).

In Pennsylvania, if an individual dies intestate, his estate passes first to any surviving spouse, then to any surviving children, and then to the parents of the decedent. 20 Pa. C.S.A. §§ 2102, 2103.  Where, as is asserted in this instance, there is no spouse or children, then the property passes to the surviving parent or parents.  20 Pa. C.S.A. § 2103(2).[13]

Generally, one claiming to be the sole intestate heir must prove "by a fair preponderance of trustworthy and satisfying evidence" the nonexistence of heirs of equal or greater rank.  See In re MacCarthy Estate, 17 Pa. D. & C.3d 600, 612 (Pa. Com. Pl. 1980).  However, I acknowledge the difficulty of one attempting to prove the absence of

---

[13]20 Pa. C.S.A. § 2103 provides, in relevant part:

§ 2103. Shares of others than surviving spouse

The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall pass in the following order:

(1) Issue.–To the issue of the decedent.

(2) Parents.–If no issue survives the decedent, then to the parents or parent of the decedent.

heirs.  "Forcing someone to prove a negative—i.e., the nonexistence of someone else—borders on the absurd."  In re MacCarthy Estate, 17 Pa. D. & C.3d at 605.

The debtor testified that her son was unmarried and had no children of his own.  He had custody of his sister's two children.  There is some corroboration of this testimony in the fact that the debtor was appointed by the state court as her son's administratrix (rather than a spouse or an adult child), and that Mr. Bradley, in his 2004 bankruptcy case, noted on his bankruptcy Schedule I only a minor nephew and niece, when requested to identify all dependents and spouse.  Although neither the appointment as administratrix, nor presumably truthful disclosures on bankruptcy Schedule I, preclude the possibility that Mr. Bradley was the father of non-dependent children (Schedule J does not reflect that he had any support obligation in 2004), they do support the debtor's testimony that her son was not a parent nor married.  The reference to a niece and nephew also suggests that neither child had been adopted by Mr. Bradley.

Flagstar raises the possibility that Mr. Bradley's father is still alive, but there was no evidence on this point offered by either party, other than Flagstar's inference that the debtor's disclosure on Schedule I of income under the heading "alimony, maintenance or support" means that Mr. Bradley's father is the source of those payments.  If I assume that Mr. Bradley's father survived his death, any interest he would inherit through intestacy would be in pari passu, i.e., equally, with the debtor.  See 20 Pa. C.S.A. § 2104(7).[14]  Therefore, for purposes of this contested matter, the evidence supports a

---

[14]20 Pa. C.S.A. §2104(7) provides:

(7) Tenancy in estate.–When real or personal estate or shares therein shall pass to two or more persons, they shall take it as

(continued...)

likelihood that the debtor inherited at least a partial ownership interest in the Douglas

Avenue property.[15]


B.


Having concluded that the debtor likely inherited an ownership interest in

the Douglas Avenue realty, I must address a second contention posed by Flagstar: Does

the debtor have the right to propose a chapter 13 plan, pursuant to 11 U.S.C. § 1322(b)(5),

that will cure the mortgage arrearage on the Douglas Avenue property?

As noted above, the debtor never entered into any note or mortgage

obligation with Flagstar.  Her son did in 1995.  Thus, Flagstar strenuously maintains that

it is not a creditor of the debtor and should not be affected by the debtor's instant chapter

13 case.  The debtor responds by arguing that the Supreme Court decision <u>Johnson v.</u>

<u>Home State Bank</u>, 501 U.S. 78 (1991), renders Flagstar a creditor for purposes of chapter

13, even though the debtor is under no obligation to it from any promissory note or signed

mortgage.

---

[14](...continued)
tenants in common, except that if it shall pass to a husband and
wife they shall take it as tenants by the entireties.

[15]Contrary to the argument of Flagstar, transfer of an ownership interest to an heir
is immediate upon the death of the decedent, <u>see</u> <u>Blank v. Clark</u>, 79 F. Supp. 373, 376-77 (E.D.
Pa. 1948) ("In Pennsylvania, upon the death of an intestate, title to real property belonging to his
estate descends immediately to his heirs."), although the heir's ownership interest may still be
subject to the statutory powers of an existing administratrix.  <u>See</u> <u>Quality Lumber and Millwork</u>
<u>Company v. Andrus</u>, 414 Pa. 411, 415 (1964).

For reasons to be discussed, I conclude that the debtor construes the

Johnson holding too broadly (while Flagstar does not address it at all).  Though the

Johnson decision is of some relevance, the ability of the debtor to utilize chapter 13 to

cure a mortgage arrearage incurred by her son arises as much from a non-bankruptcy

statute as from the Bankruptcy Code.

In Johnson, the debtor had entered into a promissory note and mortgage

with a lender, but had previously eliminated his personal liability on the note through a

chapter 7 bankruptcy discharge.  The issue before the Court in Johnson, which was

answered in the affirmative, is whether the remaining in rem liability from the original

mortgage that survived the chapter 7 bankruptcy discharge rendered the lender a secured

creditor of the debtor in the subsequent chapter 13 case within the meaning of the

Bankruptcy Code.  That issue must be contrasted with the situation of a debtor who is

simply a transferee of the realty from the original borrower.  Moreover (and overlooked

by the debtor in her memorandum), in Johnson the chapter 13 plan at issue called for the

debtor to repay the entire mortgage amount, with interest, over the life of the plan,

pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).  Id., 501 U.S. at 81.  Here, the debtor's plan

calls for a cure and maintenance of mortgage payments to Flagstar, pursuant to 11 U.S.C.

§ 1322(b)(5), rather than repayment in full over the life of the plan.

Although the debtor did not enter into any mortgage agreement with

Flagstar (nor its predecessor in interest), under state law, one who inherits property takes

the interest that the decedent held at the time of death.   20 Pa. C.S.A. § 2104(6);[16] see In re Camp, 78 B.R. 58, 64 n.8 (Bankr. E.D. Pa. 1987) (inheritance of property subject to note and mortgage is taken subject to the debt, though heirs are not personally liable). Thus, any liens on the property which exist at the decedent's death are not impaired by the transfer to his heirs.  20 Pa. C.S.A. § 3381.[17]  As an Official Comment explains: "[t]his is consistent with existing law and is included herein to avoid any possible indication that the rights of lien creditors will be impaired by death."  Official Comment to 20 Pa. C.S.A. § 3381.  As a result, to the extent that the debtor inherited an interest in the Douglas Avenue realty, as the parent of an intestate child, she did so subject to the existing mortgage held by Flagstar.

The mortgage lien represents only an in rem liability of the debtor; an heir is not personally liable to the lien creditor.  See Commonwealth v. Dunmeyer Estate, 74 Pa. D. & C.2d 614, 619 (Pa. Com. Pl. 1974) ("Their liability is in rem only, and is restricted to land, if any, inherited from the decedent subject to the judgment."); see generally Kirk, Hutton & Co. v. Van Horn, 265 Pa. 549 (1920) (proceeding to revive lien on land of decedent is strictly in rem).  Therefore, Flagstar holds a lien against the

---

[16]20 Pa. C.S.A. § 2104(6) provides:

(6) Quantity of estate.–Any person taking real or personal estate under this chapter shall take such interest as the decedent had therein.

[17]20 Pa. C.S.A. § 3381 provides:

§ 3381. Liens and charges existing at death not impaired

Nothing in this code shall be construed as impairing any lien or charge on real or personal estate of the decedent which existed at his death.

Douglas Avenue property, in which the debtor holds an ownership interest, but the mortgagee has no personal claim against her.

In light of the Supreme Court's decision in <u>Johnson v. Home State Bank</u>, the <u>Hutcherson</u> court determined that a debtor who inherited a one-quarter interest in property encumbered by a mortgage that had been in default and accelerated prior to the debtor's inheritance, could provide for that secured claim in his chapter 13 plan.  <u>In re Hutcherson</u>, 186 B.R. 546 (Bankr. N.D. Ga. 1995).  The court focused on <u>Johnson's</u> conclusion that an <u>in rem</u> claim was a claim against the property of the bankruptcy estate, and therefore could be included in the chapter 13 plan.  It did not matter that the debtor was not the original obligor, as the claim was against the property, not the debtor.  <u>See In re Hutcherson</u>, 186 B.R. at 549-550.

This conclusion, however, does not end the analysis.

In Pennsylvania, "[a] terre tenant is '. . . one who purchases and takes land subject to the existing lien of a mortgage or judgment against a former owner.'"  <u>Marra v. Stocker</u>, 532 Pa. 187, 190 n. 4 (1992) (quoting Black's Law Dictionary at p. 1642 (4th ed. 1968)); <u>accord</u>, <u>e.g.</u>, <u>Com. Trust Co. of Pittsburgh v. Harkins</u>, 312 Pa. 402, 408-09 (1933).  By virtue of section 21 P.S. § 733,[18] an owner of property—even though not the

---

[18]21 P.S. § 733 provides:

It shall be lawful for any person or persons, natural or artificial, holding lands encumbered by a mortgage, judgment, recognizance, or other security, after the same shall become due and payable, his or their agent, attorney, or terre tenant, to tender to the owner or owners of such mortgage, judgment, recognizance, or other security, the full sum of money due thereon, including interest and any other charges due, and, upon such tender, to require the owner or owners to assign and transfer to such person or persons as the

(continued...)

mortgagee—has the right to repay the mortgage obligation in full and thereby obtain a satisfaction of that lien.  See Sheaffer v. Baeringer, 346 Pa. 32 (1943); Mellon Bank, N.A. v. Joseph, 267 Pa. Super. 307 (1979).

Where, as in this instance, the mortgage contains a "due on sale clause," then the transfer of realty to the debtor is subject to a pre-existing mortgage, and the debtor, who is a "terre tenant," typically will have no right under chapter 13 to cure the mortgage under section 1322(b)(5).  At most, a debtor can use chapter 13 only to repay the entire mortgage amount outstanding, with interest, over the life of a confirmed plan, pursuant to section 1325(a)(5)(ii).  See In re Lippolis, 228 B.R. 106 (E.D. Pa. 1998); In re Allen, 300 B.R. 105 (Bankr. D.D.C. 2003); In re Allston, 206 B.R. 297 (Bankr.  E.D.N.Y. 1997) (transferee permitted to repay mortgage claim in full).  A debtor/transferee will have no right to cure the prepetition mortgage delinquency and assume the mortgage obligation, thus abrogating the due on sale provision of the mortgage.

Conversely, if the mortgage contained no due on sale clause, or if the due on sale clause were unenforceable, then a debtor/transferee would have the right to assume the mortgage agreement, and therefore could tender monthly mortgage payments and would possess the right to cure any prepetition mortgage default in a chapter 13 plan. See In re Curinton, 300 B.R. 78, 84 (Bankr. M.D. Fla. 2003).  (Indeed, the mortgage involved in this dispute, attached to Ex. M-6, states in paragraph 12 that its provisions

_____

[18](...continued)
owner of the encumbered property may name, such mortgage, judgment, recognizance, or other security. Such assignment shall create no personal liability on the part of the assignor, by way of implied warranty, or otherwise, and any such assignment shall be without recourse.

shall be binding upon any assignee of the borrower, subject to the due on sale provisions

of paragraph 17.)

 In general, due on sale clauses are enforceable in Pennsylvania.  <u>See</u>

<u>Cloverleaf Development, Inc. v. Horizon Financial F.A.</u>, 347 Pa. Super. 75, 84 (1985);

<u>Bank of Pennsylvania v. G/N Enterprises, Inc.</u>, 316 Pa. Super. 367, 373-75 (1983).[19]

However, and though not mentioned by either party in this contested matter, a federal

statute renders that clause unenforceable by Flagstar on these particular facts.

 "The Garn-St. Germain Depository Institutions Act of 1982" provides in 12

U.S.C. § 1701j-3(d) as follows:

> (d) Exemption of specified transfers or dispositions
>
> With respect to a real property loan secured by a lien on
> residential real property containing less than five dwelling
> units, including a lien on the stock allocated to a dwelling unit
> in a cooperative housing corporation, or on a residential
> manufactured home, a lender may not exercise its option
> pursuant to a due-on-sale clause upon–
> ***
> (5) a transfer to a relative resulting from the death of a
> borrower[.]

Accordingly, federal law precludes the enforcement of a due on sale provision if the

relevant transfer occurred via state intestacy law to the mortgagor's parent.[20]

 There are at least two reported decisions holding that a chapter 13 debtor,

who is a transferee of the original mortgagor, can cure a mortgage arrearage under section

---

[19]Moreover, federal law preempts state law restrictions on enforcement of such
provisions.  <u>See</u> <u>Warrington 611 Associates v. Aetna Life Ins. Co.</u>, 705 F. Supp. 229, 235 (D.N.J.
1989); <u>In re Allen</u>, 300 B.R. at 119.

[20]The Flagstar mortgage inferentially references The Garn-St. Germain
Depository Institutions Act of 1982, because paragraph 17 expressly states that the enforcement
of the due on sale provision may be prohibited by federal law.  Ex. M-6.

1322(b)(5) when the contractual due on sale clause was rendered unenforceable by The

Garn-St. Germain Depository Institutions Act of 1982.  See In re Jordan, 199 B.R. 68

(Bankr. S.D. Fla. 1996); In re Lumpkin, 144 B.R. 240 (Bankr. D. Conn. 1992).  I find

their conclusion consistent with congressional intent.

Accordingly, unless this case was filed in bad faith, the transferee status of

the debtor does not preclude her use of the cure provisions of chapter 13.[21]


III.


As mentioned earlier, Flagstar argues that the debtor's bankruptcy case was

filed in bad faith as it was done solely to forestall foreclosure of the Douglas Avenue

property, which Flagstar had been prevented from repossessing since 1999, due to Mr.

Bradley's two unsuccessful chapter 13 bankruptcy filings.  Flagstar also emphasizes the

extraordinary number of prior bankruptcy filings by this debtor, the majority of them

ultimately dismissed.  It avers that the present bankruptcy filing was part of the debtor's

continuing pattern of bankruptcy filings designed to delay rather than to reorganize.

In addition, Flagstar argues that the debtor's proposed chapter 13 plan is

infeasible, as it is premised upon her continuing to receive overtime pay throughout the

---

[21]Flagstar also argues that state law would render the decedent mortgagor's personal liability on his promissory note a claim against the decedent's estate which must be repaid in full.  Whether or not that is accurate, it does not follow that the executrix or administratrix of the decedent's estate is thus obligated to sell the realty to pay this claim in full.  To so conclude would undermine the above-quoted federal statute that nullifies the due on sale clause.

60-month plan.  It further maintains that the $12,000 total that the debtor proposes to pay

the trustee is insufficient to cure the amount of the mortgage arrearage.

The debtor responds that her numerous prior bankruptcy filings are not

relevant, as they involved efforts to save her Boyle Street property, realty in which she no

longer resides after the murder of her daughter in a nearby property.  She further contends

that her financial circumstances have improved since her prior filings, in that she has been

employed for about one year as a driver for Community Transit.  Although she has two

more children to care for, she receives social security income on their behalf.  She

questions the movant's assertion that the arrearage exceeds the amount provided for in

her plan, suggesting instead that the arrears could not be more than $10,000, as her son

had paid down much of the mortgage delinquency during his 1999 bankruptcy case.

Thus, the debtor maintains that her current filing has a reasonable probability of success.

(That success, however, she concedes is contingent on the resolution of the amount of the

arrears.)


A.


Before addressing the issue of bad faith, I note that Flagstar also contends

that even if this bankruptcy filing were in good faith, the bankruptcy stay should be

terminated nevertheless because the debtor has no equity in the Douglas Avenue property

and that realty is not necessary for the debtor's reorganization, as she is able to reside at

the Boyle Street property she owns.  Section 362(d)(2) provides:

> (d) On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided

under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–. . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if–

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d)(2).

Therefore, relief from the bankruptcy stay may be granted under section 362(d)(2) only if two components are established. Section 362(d)(2)(A) requires a showing that there is no "equity" in the collateral; that is, a showing that the value of the collateral is less than the sum total of all of its liens. See, e.g., In re Indian Palms Associates, Ltd., 61 F.3d 197, 206 (3d Cir. 1995) ("The classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value."); In re Liona Corp., N.V., 68 B.R. 761, 766 (Bankr. E.D. Pa. 1987); In re Jug End in the Berkshires, Inc., 46 B.R. 892, 901 (Bankr. D. Mass. 1985). Furthermore, the party seeking relief from the stay has the evidentiary burden of demonstrating lack of equity. 11 U.S.C. § 362(g)(1); In re Liona Corp., N.V., 68 B.R. at 766.

If the movant demonstrates that there is no equity in the collateral, then party opposing the termination of the stay has the burden of demonstrating that the collateral is necessary for a plan of reorganization "that is in prospect" within a reasonable time. 11 U.S.C. § 362(d)(2)(B), (g)(2); United Savings Associates of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988).

In this contested matter, Flagstar has offered no evidence regarding the value of the Douglas Avenue property.  It has submitted into evidence a copy of the proof of claim it filed in Mr. Bradley's 2004 case.  This secured claim, filed October 20, 2004, alleges a total secured claim of $76,086.56, of which $28,215.61 constitutes arrears. Flagstar has not filed a proof of claim in this case.  The debtor submitted no evidence disputing the arrearage amount other than the chapter 13 ledger from her son's bankruptcy case.  Ex. D-1.  It shows that as of August 10, 2004, Mr. Bradley had reduced the arrears from $20,300 to $1,840.15.

While the movant presented no evidence as to the current value of the Douglas Avenue property, on her Schedule A the debtor stated the value of the Douglas Avenue property to be $80,000 (with a $65,000 mortgage claim held by Flagstar), which value, she testified, was taken from her son's prior bankruptcy schedules.  The only other secured claim against the property was filed by the Delaware County Tax Claim Bureau in the amount of $2,371.97.[22]

If the debtor's valuation and estimate of Flagstar's claim is correct, Flagstar appears to be fully secured. See, e.g., In re American Sweeteners, Inc., 1999 WL 1068446, at *7 (Bankr. E.D. Pa. 1999); see also In re Ward, 837 F.2d 124, 128 (3d Cir. 1988).  Although the debtor's estimates may not be accurate, Flagstar failed to fulfill its evidentiary burden to demonstrate both the value of the property and that the various liens exceeded that value.  As there was no showing of lack of equity, the debtor does not have to prove that the property is necessary for an effective reorganization.  Thus relief from

---

[22]According to the debtor's schedules, the only other secured claims are liens against her Boyle Street property.

the stay pursuant to section 362(d)(2) will be denied.  See, e.g., In re Kaplan, 94 B.R. 620, 621 (Bankr. W.D. Mo. 1989); Matter of Cardell, 88 B.R. 627, 631-32 (Bankr. D.N.J. 1988); In re Skipworth, 69 B.R. 526, 527 (Bankr. E.D. Pa. 1987).


B.


Finally, I turn to Flagstar's main contention.  It seeks either dismissal of this chapter 13 case, or relief from the bankruptcy stay under section 362(d)(1), based upon the assertion that the present chapter 13 case was filed in bad faith.[23]  See generally In re Lilley, 91 F.3d 491, 494 (3d Cir. 1996); Matter of Smith, 848 F.2d 813, 816 n.3 (7th Cir. 1988); In re Legree, 285 B.R. 615, 618 (Bankr. E.D. Pa. 2002); In re Powers, 135 B.R. 980, 990-91 (Bankr. C.D. Cal. 1991).

Section 1307(c) permits a chapter 13 case to be dismissed for cause and the statute provides some non-exclusive examples.  11 U.S.C. § 1307(c).  In In re Lilley, 91 F.3d 491 (3d Cir. 1996), the Third Circuit Court of Appeals held that section 1307(c) must be interpreted as requiring that all chapter 13 cases be filed in good faith:

> It is clear that Chapter 13 contains no explicit good faith requirement. Section 1307(c) provides, however, that Chapter 13 petitions may be dismissed "for cause."  11 U.S.C. § 1307(c).  The Seventh, Ninth and Tenth Circuits have held

---

[23]Since dismissal of a bankruptcy case would terminate the automatic stay by virtue of section 362(c)(2)(B), courts have held that facts which would justify the dismissal of a bankruptcy case also constitute "cause" for granting relief under section 362(d)(1).  See, e.g., In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) (and cases cited); In re Harris, 192 B.R. 334, 337 (Bankr. W.D.N.Y. 1996); Matter of Nelson, 66 B.R. 231 (Bankr. D.N.J. 1986), aff'd without op., 838 F.2d 1207 (3d Cir. 1988); In re Augustus Court Associates,  43 B.R. 352, 354 (Bankr. E.D. Pa. 1984).

> that lack of good faith in filing is sufficient cause for
> dismissal under section 1307(c).  See In re Love, 957 F.2d
> 1350, 1354 (7th Cir. 1992); In re Eisen, 14 F.3d 469, 470 (9th
> Cir. 1994); In re Gier, 986 F.2d 1326, 1329-30 (10th Cir.
> 1993).  We agree.

Id., at 496.

The Court of Appeals explained that the determination of whether a chapter

13 case was commenced in good faith must be left to the discretion of the bankruptcy

court, based upon the "totality of the circumstances"; moreover, the appellate court

enumerated certain factors as relevant to this good faith analysis:

> As the Seventh Circuit has noted, however, "good faith is a
> term incapable of precise definition."  In re Love, 957 F.2d at
> 1355.  As a result, we believe that "the good faith inquiry is a
> fact intensive determination better left to the discretion of the
> bankruptcy court."  Id.  We therefore join the Seventh, Ninth
> and Tenth Circuits in holding that the good faith of Chapter
> 13 filings must be assessed on a case-by-case basis in light of
> the totality of the circumstances.  In re Love, 957 F.2d at
> 1355; In re Gier, 986 F.2d at 1329; In re Eisen, 14 F.3d at
> 470.  Factors relevant to the totality of the circumstances
> inquiry may include, among others, the following: the nature
> of the debt . . . ; the timing of the petition; how the debt arose;
> the debtor's motive in filing the petition; how the debtor's
> actions affected creditors; the debtor's treatment of creditors
> both before and after the petition was filed; and whether the
> debtor has been forthcoming with the bankruptcy court and
> the creditors.  In re Love, 957 F.2d at 1357.

Id.; see, e.g., In re Privitera, 2003 WL 21460027 (Bankr. E.D. Pa. 2003).

In general, while the Bankruptcy Code does not contain any express

limitation on refiling a bankruptcy case after another is dismissed—unless the dismissal

order contains such a prohibition, see In re Casse, 198 F.3d 327 (2d Cir. 1999), or the

provisions of section 109(g) apply—many courts have recognized that it is inappropriate

for a debtor to file another bankruptcy reorganization case (under chapters 11, 12, or 13) after dismissal of an earlier one, unless there has been a material change of circumstances "between dismissal of the prior case and commencement of the new case," In re Huerta, 137 B.R. 356, 368 (Bankr. C.D. Cal. 1992), which demonstrates that the second (or later) reorganization attempt now has a possibility of success after the first had failed.  See, e.g., Matter of Elmwood Dev. Co., 964 F.2d 508 (5th Cir. 1992); In re Chisum, 847 F.2d 597 (9th Cir. 1988); In re Johnson, 708 F.2d 865 (2d Cir. 1983); In re Oglesby, 158 B.R. 602 (E.D. Pa. 1993); In re McKissie, 103 B.R. 189, 192 (Bankr. N.D. Ill. 1989).[24]

Serial or successive bankruptcy filings may be evidence of misuse of the bankruptcy process, intended only to forestall the collection efforts of creditors and not filed in good faith.  See, e.g., In re Huerta, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992). The "kind of 'changed circumstances' required to justify a successive filing must be positive changes" reflecting on the debtor's ability to successfully reorganize under chapter 13.  Id. at 368.

When a party in interest shows that there have been repeated unsuccessful bankruptcy reorganization filings, the debtor has the evidentiary burden to demonstrate that her circumstances have materially changed so there is some likelihood that the

---

[24]Debtor's counsel unpersuasively argues in this dispute, as he has done in many others, that no individual can be barred from filing a bankruptcy case unless prohibited by section 109(g).  That position, however, has been squarely rejected by numerous courts including the Second Circuit Court of Appeals in In re Casse, 198 F.3d 327, 338-340 (2d Cir. 1999).  Casse held that, in appropriate circumstances, a bankruptcy court may prohibit future bankruptcy filings pursuant to 11 U.S.C. §§ 105(a) and 349.  See also U.S. v. Mourad, 289 F.3d 174, 178 (1st Cir. 2002); In re Tomlin, 105 F.3d 933 (4th Cir. 1997).  The reasoning of Casse has been accepted in this district.  See, e.g., Haines v. Miller, 2004 WL 1987218, at *2 (E.D. Pa. 2004); In re Callahan, 2004 WL 350753, at *4-*5 (E.D. Pa. 2004); In re Hamer, 2000 WL 1230496, at *6 (E.D. Pa. 2000) ("Together, therefore, §§ 105(a) and 349(a) enable the bankruptcy court to restrict a debtor's ability to file subsequent petitions.").

present reorganization case will succeed.  A failure to do so may permit a court to
"reasonably infer that the successively filed case or cases were commenced solely to
prevent or delay foreclosure."  In re Huerta, 137 B.R. at 369; see In re McKissie, 103
B.R. at 192 ("The Debtors have not produced any evidence that there has been a bona
fide objective change in their circumstances since the filing and dismissal of the first
Chapter 13 case to justify the filing of their serial case.").  Conversely, if such a material
change exists, a court has discretion to decide that the debtor is not acting in bad faith.
See In re Barrett, 964 F.2d 588 (6th Cir. 1992) (change in circumstances made the
debtor's successful reorganization extremely likely and the filing undertaken in good
faith); see also In re LeGree, 285 B.R. at 619.

         This evidentiary burden is consistent with the allocation of the burden of
persuasion established by the Third Circuit Court of Appeals in non-chapter 13
bankruptcy cases when a party seeks dismissal for a bad faith filing.  See In re Tamecki,
229 F.3d 205, 207 (3d Cir. 2000); In re SGL Carbon Corp., 200 F.3d 154, 162 n.10 (3d
Cir. 1999).  Essentially, once the moving party demonstrates serial filings, the debtor
must come forward with evidence demonstrating that the bankruptcy process is not being
misused.

         When an individual has filed many failed reorganization cases, as in this
instance, the evidence needed to demonstrate a material change in circumstances
supporting a reasonable possibility of reorganization grows heavier.  See In re LeGree,
285 B.R. at 620.

         In determining whether a bad faith filing exists, the bankruptcy court has
the discretion to reach the appropriate result in a particular case based upon all of the

circumstances.  See In re Lilley, 91 F.3d at 496;  Matter of Love, 957 F.2d 1350, 1354

(7th Cir. 1992); In re Mazzocone, 180 B.R. 782 (E.D. Pa. 1995).

      As mentioned earlier, Mr. Bradley had been barred from filing further

bankruptcy cases by an order  entered on January 18, 2005.  Ex. M-3.  Although the

debtor is not Mr. Bradley, I note that the bankruptcy filings of different individuals may

be imputed to one another and considered serial filings by the same "debtor" if they are a

coordinated effort by these individuals to frustrate the actions of a particular creditor and

abuse the bankruptcy system.  See, e.g., In re Merchant, 256 B.R. 572 (Bankr. W.D. Pa.

2000); In re Graham, 1998 WL 473051, at *2 (Bankr. E.D. Pa. 1998);  In re Ouverson, 79

B.R. 830 (Bankr. N.D. Iowa 1987).

      Although Flagstar argues to the contrary, the debtor's present bankruptcy

filing does not represent a coordinated effort with Mr. Bradley to prevent foreclosure.

First, the debtor's ownership interest only came about due to Mr. Bradley's death, not by

voluntary transfer.  And the debtor offered a plausible explanation for her present

residence in the Douglas Avenue property.[25]  By way of contrast, the Ouverson case

involved a husband and wife who between them filed four times to invoke the automatic

stay.  Certainly here, if the debtor's bankruptcy case is unsuccessful, Mr. Bradley cannot

frustrate the movant's foreclosure efforts by filing another bankruptcy case.  Thus this is

not the "tag team" situation that would represent an abuse of the bankruptcy system.

      Second, the financial circumstances of Mr. Bradley and the debtor are

sufficiently disparate that it would be inappropriate to treat the instant bankruptcy case as

---

[25]She testified that the property was owned for many years by a relative before her
son took title, and that her Boyle Street property is an unattractive residence because it reminds
her of the violent death of her daughter in 2001 that occurred nearby.

though it were a third effort by Mr. Bradley to reorganize under chapter 13.  Indeed, his

income is not utilized in this chapter 13 case.

Flagstar also contends that the debtor's numerous prior unsuccessful

chapter 13 filings, even though they involved other real property and other creditors,

represent evidence of the debtor's misuse of the bankruptcy process, or at least a pattern

of proposing unrealistic plans.  To that argument, Flagstar adds the errors and omissions

in the debtor's bankruptcy petition and schedules, outlined above, and her reliance upon

overtime income to pay for her plan.

I find that issue exceedingly close.  Were the evidence clear that the

debtor's proposed chapter 13 plan under section 1322(b)(5) is significantly underfunded,

or had Flagstar been delayed in any manner by the debtor's numerous prior bankruptcy

cases, the absence of good faith by this debtor would be apparent.  However, Flagstar was

unaffected by the debtor's past nine bankruptcy filings.  Her errors in the bankruptcy

petition and schedules were likely due to carelessness of her bankruptcy attorney.  While

the debtor's income may not include overtime every month, there may well be increases

in salary and benefits paid to her over the life of her plan.  Finally, there is no basis from

the evidence presented to approximate the mortgage obligation currently owed to

Flagstar: either the arrrearage or the total debt.

The October 2004 proof of claim submitted by Flagstar states that Mr.

Bradley was 19 months delinquent in mortgage payments as of August 2004 and the

mortgage arrearage exceeded $28,000.  However, the docket entries made in Mr.

Bradley's 1999 bankruptcy case disclose that Flagstar agreed on May 12, 2004, to vacate

an order for relief that had been granted in Flagstar's favor on October 28, 2003.  In all

26

likelihood, that lift-stay order would have been based upon Mr. Bradley's failure to tender all required postpetition mortgage payments.

The 1999 case was dismissed on motion of the trustee, before the parties filed a copy of their settlement agreement. Nevertheless, the announced willingness of Flagstar to vacate the order permitting it to resume foreclosure in state court suggests that Mr. Bradley either became current or almost current in his post-bankruptcy mortgage obligation to Flagstar. That inference—coupled with the trustee's report dated August 2004, reflecting that Flagstar was paid almost $18,500 of its $20,300 prepetition arrearage during the 1999 case—makes at least questionable Flagstar's October 2004 assertion (made in Mr. Bradley's second bankruptcy case) that his mortgage had a $28,000 delinquency at that time.

As a result, based upon the limited evidence presented, I cannot agree with Flagstar that the debtor's proposed chapter 13 plan to pay $12,000 to the trustee, with most of the funds used to cure the mortgage delinquency, is woefully inadequate. Further evidence is needed to clarify this point, evidence that may be presented at a confirmation hearing on this plan.

IV.

Rarely will an individual's tenth bankruptcy petition be filed in good faith. However, the Third Circuit Court of Appeals has instructed that a determination of good faith is not formulaic; it must be based upon the totality of the circumstances. The circumstances in this dispute are unusual, and so render the issue of good faith very close.

In addition to the debtor's numerous prior unsuccessful chapter 13 filings, there was evidence of the death of the mortgagor, a likely intestate inheritance by the debtor, and the movement into the mortgagor's residence by the debtor.  There was also evidence that the original mortgagor may have come close to curing the mortgage delinquency during a prior bankruptcy case.  There is a federal statute rendering the contractual due on sale clause unenforceable.   There was evidence of the debtor's recent employment and possible ability to reorganize, depending upon the amount of the mortgage arrearage—an amount that is in legitimate dispute.

Under these circumstance, the better exercise of discretion is to permit this chapter 13 case to continue, albeit on a short leash.  See also In re Brown, 951 F.2d 564, 572 (3d Cir. 1991) ("[W]e think that the evidence, then existing, of bad faith was not strong enough to enable us to say that it was established as a matter of law.").  Flagstaff, however, is entitled to conditional relief from the bankruptcy stay, coupled with a conditional dismissal order.

Thus, if the debtor is unable to confirm a chapter 13 plan promptly, then this case shall be dismissed upon the entry of an order denying confirmation, and the debtor shall be barred from any further bankruptcy filings without prior court approval. See In re Narod, 138 B.R. 478, 484 n.14 (E.D. Pa. 1992).

Second, the bankruptcy stay shall be conditionally terminated.  The debtor will be required to tender all postpetition mortgage payments due to Flagstaff.  If the debtor fails to do so, the bankruptcy stay shall be terminated upon ten days notice to the debtor and her counsel, unless the delinquency is cured within the ten day period.

28

Third, the debtor is required to tender all proposed plan payments to the trustee in a timely manner.  If the debtor fails to do so, then the bankruptcy stay shall be terminated upon ten days notice to the debtor and his counsel, unless the delinquency is cured within that time period.

Fourth, the debtor shall be required promptly to present proof of property insurance for the Douglas Avenue realty, with Flagstar named as loss payee.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :          Chapter 13

CAROLYN E. SAUNDERS                            :

            Debtor                             :          Bankruptcy No. 05-14158F

_____

.................................................

ORDER

.................................................

AND NOW, this 11th day of August 2005, for the reasons stated in the accompanying memorandum, it is hereby ordered that the motion of Flagstar Bank to dismiss this case or for termination of the automatic stay is conditionally denied. The case will remain pending and the bankruptcy stay will remain in effect as to Flagstar, subject to the following conditions:

1. The debtor shall confirm a chapter 13 plan promptly, which plan shall provide for the allowed secured claim of Flagstar. If the debtor fails to do so, then this case shall be dismissed upon the entry of an order denying confirmation, and the debtor shall be barred from any further bankruptcy filings without prior court approval. See In re Narod, 138 B.R. 478, 484 n.14 (E.D. Pa. 1992).

2. The debtor is required to tender all postpetition mortgage payments due to Flagstaff. If the debtor fails to do so, the bankruptcy stay shall be terminated upon ten days notice to the debtor and her counsel, unless the delinquency is cured within the ten day period. Flagstar may seek to enforce this provision upon notice but without an additional hearing.

3. The debtor shall tender all proposed plan payments to the trustee in a timely manner.  If the debtor fails to do so, then the bankruptcy stay shall be terminated upon ten days notice to the debtor and her counsel, unless the delinquency is cured within that time period.  Flagstar may seek to enforce this provision upon notice but without an additional hearing.

4. On or before August 23, 2005, the debtor shall provide proof of property insurance for the Douglas Avenue realty, with Flagstar named as loss payee.  If the debtor fails to do so, the bankruptcy stay shall be terminated.  Flagstar may seek to enforce this provision upon notice but without an additional hearing.

5. The confirmation hearing and the hearing on the trustee's motion to dismiss, currently scheduled for August 23, 2005 at 10:00 A.M and 11:00 A.M. respectively, shall both be heard at 4:00 P.M. in August 23rd in Bankruptcy Courtroom #2.

_____
for BRUCE FOX
United States Bankruptcy Judge


copies to:

Ms. Carolyn E. Saunders
2390 Douglas Avenue
Aston, PA 19014

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall

Suite 583
Philadelphia, PA 19106

Peter J. Mulcahy, Esq.
Phelan Hallinan & Schmieg, LLP
1617 JFK Blvd.
Suite 1400
Philadelphia, PA 19103

Kevin Callahan, Esq.
United States Trustee
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

B. Townsend, Courtroom Deputy