UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| CAROLYN E. SAUNDERS | : | |
| Debtor | : | Bankruptcy No. 05-14158bf |

................................................

MEMORANDUM

................................................

Two motions are presently before me. First, the standing chapter 13 trustee, William C. Miller, Esq., has moved to dismiss this chapter 13 case, pursuant to 11 U.S.C. § 1307(c), due to the debtor's failure to tender all payments required by the terms of her confirmed chapter 13 plan. This motion to dismiss is supported by secured creditor Flagstar Bank—which creditor holds a first mortgage lien on the debtor's residence, located at 2390 Douglas Avenue, Aston, Pennsylvania—but dismissal is opposed by the debtor. In addition (perhaps in response to the trustee's motion), the debtor has moved to modify her confirmed plan under section 1329. The debtor's motion to modify is challenged by Flagstar Bank and the trustee.

A consolidated evidentiary record was made and the following facts were either proven or are the proper subject of judicial notice.

I.

On March 29, 2005, the debtor filed a voluntary petition in bankruptcy under chapter 13. As discussed in a memorandum and order dated August 11, 2005, at

the time of this filing the Aston property in which the debtor resided, and upon which

Flagstar held a mortgage, was titled in the name of her deceased son.  The mortgage was

in default and Flagstar had begun the foreclosure process, thus triggering this bankruptcy

filing.

      The March 2005 filing was not the debtor's first such bankruptcy filing in

this district.  Indeed, Ms. Saunders' history of bankruptcy filings in this court spans more

than 21 years.  Her first bankruptcy petition was filed in 1986.  The present bankruptcy

case is her tenth.  See Memorandum and Order dated August 11, 2005.

      Over the objections of Flagstar and the chapter 13 trustee, for reasons

detailed in the August 2005 memorandum, Ms. Saunders' present case was not then

dismissed on the ground of bad faith.  She was, however, directed to remain current in

this case with post-bankruptcy mortgage payments to Flagstar and plan payments to the

trustee.  As will be discussed below, she has been unable to do so.

      After considerable litigation, the debtor was able to confirm her third

amended chapter 13 plan.  This approved plan, dated November 7, 2005, called for

payments to the trustee in the amount of $525 per month for 54 months, plus regular

monthly mortgage payments to Flagstar.  These trustee payments were intended to cure a

prepetition mortgage arrearage of $26,000.  See Third Amended Chapter 13 Plan, ¶¶ 2-3;

see generally 11 U.S.C. § 1322(b)(5).[1]

      The debtor experienced difficulty in tendering requisite post-confirmation

plan payments and, in response to a motion to dismiss her case filed by the trustee, she

---

[1]The August 2005 memorandum discussed at length Ms. Saunders' interest in the
Aston property pursuant to 20 Pa. C.S.A. § 2103(2), as well as her ability to tender mortgage
payments by virtue of 12 U.S.C. § 1701j-3(d).  I shall not repeat that analysis.

moved to modify her confirmed plan pursuant to 11 U.S.C. § 1329. Ultimately, that modification motion was unopposed; the trustee withdrew his dismissal motion and the debtor's confirmed plan was modified by a "second revised fourth amended chapter 13 plan," dated November 21, 2006, which then became the confirmed plan. See 11 U.S.C. § 1329(b)(2). The approved second revised fourth amended plan required, inter alia, that the debtor tender monthly payments to the trustee of $623, plus regular mortgage payments to Flagstar.

After her modified plan was approved, the debtor has had difficulty complying with its terms. Once again, the chapter 13 trustee seeks dismissal; and once again, in response thereto, the debtor seeks to modify her confirmed plan. On this second occasion, however, neither Flagstar nor the trustee consent to the proposed modification.

Fed. R. Bankr. P. 3015(g) requires that a chapter 13 debtor attach the proposed modified plan to her motion. The debtor, here, has done so. This proposal, styled the "fifth amended chapter 13 plan" no longer provides for monthly payments to the trustee or to Flagstar. Instead, the debtor proposes to refinance the Aston realty and repay the outstanding Flagstar balance in full. Refinancing was to occur by February 29, 2008. Ms. Saunders testified, however, that she has received no refinancing commitment from any lender, albeit she still has loan applications pending. Thus, no refinancing has occurred.

The debtor testified that she is unemployed, and receives biweekly payments from workers' compensation. She also receives social security payments for a grandchild and monthly adoption assistance for two children. She has not tendered any mortgage payments to Flagstar since at least September 2007; and she is five months in

arrears in plan payments due to the chapter 13 trustee.  Ex. T-1.  The debtor stated that

these payment delinquencies were the result of her expending funds on home repairs for

the heater, electrical system, walls, drainage, and some painting.

Perhaps recognizing that her refinancing plan proposal may be problematic

without any loan commitment, after the evidentiary hearing concluded the debtor attached

to her post-hearing memorandum yet another proffered plan modification, styled a

"revised fifth amended plan."  This latest offering, if approved, would require monthly

plan payments of $772 along with regular mortgage payments to Flagstar, at least until

refinancing occurs at some future date.

II.

The trustee's motion to dismiss is predicated upon 11 U.S.C. § 1307(c),

which states in relevant part:

> (c) Except as provided in subsection (e) of this section, on
> request of a party in interest or the United States trustee and
> after notice and a hearing, the court may convert a case under
> this chapter to a case under chapter 7 of this title, or may
> dismiss a case under this chapter, whichever is in the best
> interests of creditors and the estate, for cause, including--
>
> ***
> (6) material default by the debtor with respect to
> a term of a confirmed plan[.]

The chapter 13 trustee is a party in interest for purposes of section 1307(c)(6) (as is

Flagstar Bank).  See, e.g., In re Forte, 2007 WL 2028894, at *4 (Bankr. E.D. Pa. 2007); In

re Slaughter, 191 B.R. 135, 144-45 (Bankr. W.D. Wis. 1995).

4

In these consolidated contested matters, the evidence is clear that the debtor has materially defaulted in two components of her confirmed plan: she has failed to tender monthly payments of $623 to the trustee for five months; and she has failed to tender monthly mortgage payments to Flagstar Bank.  Accordingly, the trustee has met his evidentiary burden for dismissal relief under section 1307(c)(6).

The provisions of section 1307(c), with its use of the word "may," are discretionary.  See In re Smith, 85 B.R. 729, 730-31 (E.D. Va. 1988); see generally In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996).  Essentially, the debtor here, while conceding her failings under the confirmed plan, maintains that dismissal is unwarranted because she can cure those plan delinquencies through the plan modification process.  And, in support thereof, she now seeks approval of a modified plan under section 1329.

Originally, her intended modification called for a loan refinancing by February 29th.  As that did not occur, her latest proposed modified plan is designed to "roll[] the [confirmed] plan arrears into the [modified] plan and increase[] the monthly payments," In re Gallagher, 332 B.R. 277, 281 n.8 (Bankr. E.D. Pa. 2005), until refinancing occurs at some unspecified future date.

Section 1329 does permit confirmed chapter 13 plans to be modified after confirmation, albeit in limited circumstances.  That statutory provision states:[2]

Modification of plan after confirmation

---

[2]This bankruptcy case commenced in March 2005.  Thus, the pre-BAPCPA provisions of section 1329 is germane.  See In re White, 370 B.R. 713, 718 n.15 (Bankr. E.D. Mich. 2007); In re Turek, 346 B.R. 350, 355 n.6 (Bankr. M.D. Pa. 2006).

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

> (2) extend or reduce the time for such payments;

> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Courts are divided, in enforcing the binding nature of a confirmed plan under section 1327(a), whether there need be any unanticipated material change of circumstances to justify modification of a confirmed chapter 13 plan. Compare, e.g., In re Murphy, 474 F.3d 143, 149 (4th Cir. 2007) (substantial and unanticipated post-confirmation change of circumstances is necessary for section 1329 modification); In re Anderson, 21 F.3d 355, 358 (9th Cir. 1994) (same); with, e.g., Barbosa v. Soloman,

235 F.3d 31, 41 (1st Cir. 2000) (court "refrain[s] from adopting the substantial and

unanticipated test for seeking a modification pursuant to § 1329"); Matter of Witkowski,

16 F.3d 739, 744 (7th Cir. 1994) ("The Code, in this instance § 1329, does not require any

threshold requirement for a modification[.]").  I need not decide that issue under section

1329(a).[3]

         Section 1329(b) incorporates the provisions of section 1325(a) into the

post-confirmation modification process.  Thus, inter alia, a proposed modified plan must

meet the feasibility requirement of 11 U.S.C. § 1325(a)(6) before it may be approved.

See In re Zavala, 366 B.R. 643, 654 (Bankr. W.D. Tex. 2007); In re Binder, 224 B.R.

483, 488-89 (Bankr. D. Colo. 1998).

         Section 1325(a)(6) requires that visionary or speculative chapter 13 plans

not be approved.  The feasibility requirement has been analyzed in the following terms:

> To satisfy feasibility, a debtor's plan must have a reasonable
> likelihood of success, i.e., that it is likely that the debtor will
> have the necessary resources to make all payments as directed
> by the plan.  11 U.S.C. § 1325(a)(6). . . .  The debtor carries
> the initial burden of showing that the plan is feasible. . . .
> Before confirmation, the bankruptcy court should be satisfied
> that the debtor has the present as well as the future financial
> capacity to comply with the terms of the plan.

In re Fantasia, 211 B.R. 420, 423  (B.A.P. 1st Cir. 1997) (citations omitted); see In re

Scott, 188 F.3d 509 (table), 1999 WL 644380, at *1 (6th Cir. 1999); In re Harris, 199

---

[3]In In re Smith, Bankr. No. 04-33231, slip op. at 9 n.7 (Feb. 1, 2008, Bankr. E.D.
Pa.), I noted a possible middle position between these two interpretations of section 1329(a).

B.R. 434, 436 (Bankr. D.N.H. 1996) (feasibility requires that the proposed chapter 13

plan have a likelihood of success).[4]

When a proposed plan calls for a lump sum payment via refinancing, the

statutory feasibility requirement obligates the debtor to present competent evidence that

refinancing is likely, typically by producing a commitment letter from a qualified lender.

See, e.g., In re Repurchase Corp., 332 B.R. 336, 343 (Bankr. N.D. Ill. 2005) ("Allowing

Debtor's confirmation to be based on a 'hope against hope that the financing [would]

actually materialize' post-confirmation without some form of corroboration would go

against a bankruptcy judge's duties of ensuring that the Plan complies with the provisions

of the Bankruptcy Code."); In re Ralph C. Tyler, P.E., P.S., Inc., 156 B.R. 995, 997

(Bankr. N.D. Ohio 1993) ("Without evidence of a firm commitment of financing, this

Plan does not meet the feasibility requirement."); In re Stratford Associates Ltd.

Partnership, 145 B.R. 689, 699 (Bankr. D. Kan. 1992) ("Generally, without proper

funding in place or a firm commitment of such funding, the Court cannot find the plan

feasible."); In re Haardt, 65 B.R. 697, 702 (Bankr. E.D. Pa. 1986) (lack of refinancing

commitment rendered plan infeasible); see also In re Made in Detroit, Inc., 299 B.R. 170,

176-77 (Bankr. E.D. Mich. 2003) (refinancing too speculative for confirmation); In re

Kovalchick, 1995 WL 118171, at *9 (Bankr. E.D. Pa. 1995) (same). Compare In re

Global Ocean Carriers Ltd., 251 B.R. 31, 46 (Bankr. D. Del. 2000) (refinancing is

_____

[4]A similar feasibility provision is found in chapter 11 cases at 11 U.S.C. §
1129(a)(11). Courts have noted that the purpose of the chapter 11 feasibility requirement is to
prevent confirmation of "visionary schemes." See Matter of Pizza of Hawaii, Inc., 761 F.2d
1374, 1382 (9th Cir. 1985); 7 Collier on Bankruptcy, ¶ 1129.03[11] (15th ed. rev. 2007). While
feasibility does not require that compliance with plan terms be guaranteed, there must be a
"reasonable prospect of success" and the plan must be "workable." Id., at 1129-74 to 74.1.

feasible under section 1129(a)(11) where lenders "have issued a commitment letter and/or agreed to term sheets which are detailed and contingent only upon final documentation, confirmation of the Modified Plan, and no materially adverse changes occurring."); see also 7 Collier on Bankruptcy, ¶ 1129.03[11], at 1129-74.2 to 74.3 (15th ed. rev. 2007).

Here, the debtor did not present any evidence to demonstrate that refinancing in this financial climate is likely. Indeed, she is unemployed and has a history of multiple bankruptcy filings, two factors that can render refinancing problematic in the best of economic times. Accordingly, the debtor seems to acknowledge that her fifth amended plan, referred to in her motion to modify, cannot be approved. Her post-hearing revised proposal concerns the more common commitment of future income and monthly plan payments.

Typically, a chapter 13 debtor meets her burden of demonstrating the viability of a chapter 13 plan based upon future income by showing a stable employment history, present employment, and a current income level sufficient to make proposed plan payments. See, e.g., In re Nottingham, 228 B.R. 316, 321 (Bankr. M.D. Fla. 1998). A few courts, however, have found a chapter 13 plan feasible when the debtor is presently unemployed but has demonstrated a sufficient likelihood of re-employment. See, e.g., In re Compton, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988); In re Van Gordon, 69 B.R. 545, 547 (Bankr. D. Mont. 1987) (the plan was found feasible because "the evidence of the Debtor is that his employment prospects after termination of his present job are good, and will provide him with the same level of income he has received in the past"). Compare In re Anderson, 21 B.R. 443 (Bankr. N.D. Ga. 1981) (unemployed debtor was unable to show he could supply regular and stable income).

9

Similarly, if a chapter 13 debtor is self-employed, the feasibility of her proposed plan will be based upon her earnings history (preferably demonstrated by federal tax returns), her current income and the likely stability of that income in the future.  If she has no such income at the time of the confirmation hearing, the debtor has the burden to demonstrate a sufficient likelihood that adequate self-employment income is imminent, or that some other income source, such as governmental benefits, can fund her plan.  See generally, e.g., In re Hammonds, 729 F.2d 1391, 1394-95 (11th Cir. 1984); In re Upton, 363 B.R. 528, 535 n.6 (Bankr. S.D. Ohio 2007); In re Ford, 345 B.R. 713, 722 (Bankr. D. Colo. 2006). [5]

Absent a showing that the chapter 13 debtor will likely have sufficient income to fund her proposed plan, confirmation will be denied.  See, e.g., In re Scott, 1999 WL 644380, at *1 ("Without a credible basis to find that he could pay the $100 per month that his plan required, the plan could not be confirmed."); In re Cherry, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988); In re McGowan, 9 B.R. 329, 330 (Bankr. E.D. Pa. 1981) ("Since the debtors have offered no evidence to show that they will be able to obtain the necessary refinancing, we conclude that it does not appear that they will be able to fund the plan as proposed"); In re Gale, 8 B.R. 960, 962-63 (Bankr. D. Md. 1981) (confirmation of chapter 13 plan is denied because future plan payments were "conjectural at best.").  The same result follows when the debtor seeks to modify her confirmed chapter 13 plan.  See In re Binder, 224 B.R. at 488-89.

---

[5]As already mentioned, the BAPCPA amendments do not apply to this case. Therefore, I need not address the implications, if any, of section 101(10A)(B)'s exclusion of social security benefits from the definition of "current monthly income" and section 1325(a)(6).

Issues of feasibility of a proposed modified plan become more pronounced when a chapter 13 debtor has failed to comply with the terms of a confirmed plan and then proposes to modify that plan with increased plan payments.  If she has failed to tender the lower amount, she has an evidentiary burden to demonstrate that circumstances have materially changed so that the greater payments will likely be tendered.  See In re Perry, 2008 WL 185617, at *4 (Bankr. E.D. Pa. 2008).  The extent of the change that must be demonstrated is related to the extent of the plan delinquency.

Here, the debtor's plan defaults to the trustee and mortgagee are extensive, and repeated.  This is her second effort at plan modification; thus her first two confirmed plans in this case have both proven to have terms too difficult for the debtor to meet.  Moreover, the debtor offers no persuasive evidence that her financial circumstances will improve to permit the tender of even greater plan payments.[6]  Even her implicit suggestion that she will no longer need to spend funds on home repairs is undermined by her concession that the Aston property needs additional work.

As Flagstar Bank and the trustee persuasively argue, given the debtor's burden of persuasion on this point, there was insufficient evidence presented to demonstrate that the debtor's proposed fifth amended chapter 13 plan (or even the revised fifth amended plan) will not suffer the same fate as her second revised fourth amended plan (and her earlier third amended plan).  See id., at *6-*7.  Therefore, as the debtor's

---

[6]For example, the debtor mentioned that she has a lawsuit pending concerning her worker's compensation benefits.  She offered no evidence, however, that this suit will soon resolve and result in either additional income or a lump sum payment to her.

proposed fifth amended plan cannot be approved under section 1329(b),[7] her motion to

modify postconfirmation shall be denied.

In light of that denial, and as no party suggests that conversion to chapter 7

is appropriate, the better exercise of discretion is to grant the trustee's motion to dismiss

under section 1307(c)(6) given the debtor's multiple plan defaults.  An appropriate order

will be entered consistent with this court's order of August 11, 2005.

---

[7]Technically, the revised fifth amended plan is not properly before me for
purposes of plan modification under section 1329.  Fed. Bankr. R. 3015(g) requires that the
proposed modification be served upon all creditors and that they have adequate opportunity to
object.  Attaching a new proposed plan modification to a memorandum after a hearing has been
held on a different plan proposal does not fulfill these procedural requirements.

At best, I can consider the revised fifth amended plan in the context of whether
dismissal of the case is warranted or whether the debtor should be given the opportunity to file
yet another motion to modify with proper service and notice.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :      Chapter 13

CAROLYN E. SAUNDERS                          :

        Debtor                               :      Bankruptcy No. 05-14158bf

_____

...............................................

ORDER

...............................................

AND NOW, this 17th day of March 2008, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the debtor's motion to modify her

confirmed plan pursuant to 11 U.S.C. § 1329 is denied.

It is further ordered that the motion of the chapter 13 trustee to dismiss this

case pursuant to 11 U.S.C. § 1307(c)(6)—due to the debtor's material defaults under the

terms of her confirmed plan—is granted and this case is dismissed.

It is further ordered that this debtor is barred from filing future bankruptcy

cases without obtaining prior court approval.  See In re Casse, 198 F.3d 327 (2d Cir.

1999);  In re Narod, 138 B.R. 478, 484 n.14 (E.D. Pa. 1992).

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Carolyn E. Saunders
2390 Douglas Avenue
Aston, PA 19014

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Andrew Spivack, Esq.
Phelan Hallinan & Schmieg, LLP
One Penn Center at Suburban Station
1617 JFK Blvd, Suite 1400
Philadelphia, PA 19103